PROB 12  
(04/08)

July 24, 2008

# UNITED STATES DISTRICT COURT
## FOR THE
## SOUTHERN DISTRICT OF CALIFORNIA

FILED  
2008 JUL 29 PM 1:16  
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

### Petition for Warrant or Summons for Offender Under Supervision

**Name of Offender:** Sergio Hirales Lopez (English)        **Dkt No.:** 08-CR-7036-001-IEG

**Reg. No.:** 10810-280

**Name of Sentencing Judicial Officer:** Isaac Fulwood and Cranston J. Mitchell, U.S. Parole Commissioners. (Originally sentenced by the Seventh Federal District Court, Tijuana, Baja California, Mexico.) Upon 18 U.S.C. § 4106A treaty transfer to the Southern District of California, case assigned to the Honorable Irma E. Gonzalez, Chief U.S. District Judge.

**Date of Foreign Sentence:** April 24, 2007

**Original Offense:** 21 U.S.C. § 841(a), Possession with Intent to Distribute Methamphetamine, a Class C felony (most analogous to Mexican charge of Possession of and Trade With Methamphetamine ).

**U.S. Parole Commission Sentence Determination:** On June 10, 2008, the ten-year custodial sentence imposed by the Mexican court was reduced to 29 months custody, and 3 years supervised release. (Special Conditions: participate as instructed in a program for the treatment of narcotic addiction or drug dependency.)

**Type of Supervision:** Supervised Release        **Date Supervision Commenced:** June 17, 2008

**Asst. U.S. Atty.:** N/A        **Defense Counsel:** Manuel Acosta-Rivera, Assistant Federal Public Defender (Appointed) (915) 534-6525

**Prior Violation History:** None.

---

### PETITIONING THE COURT

**TO ISSUE A NO-BAIL BENCH WARRANT**

The probation officer believes that the offender has violated the following condition(s) of supervision:

| **CONDITION(S)** | **ALLEGATION(S) OF NONCOMPLIANCE** |
|---|---|
| **(Mandatory Condition)**<br>Not commit another federal, state, or local crime. *(nvl)* | 1. On July 12, 2008, Mr. Lopez aided and abetted transportation of an illegal alien, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), and 18 U.S.C. § 2, as evidenced by the U.S. Department of Homeland Security, Event No. HLV0807000047. |

***Grounds for Revocation:*** The probation officer has read and reviewed the U.S. Department of Homeland Security, Report of Investigation. According to the report, on July 12, 2008, U.S. Border Patrol agents were patrolling the area near the international boundary, approximately 25 miles east of the Tecate, California, Port of Entry. The agents encountered an illegal alien who was attempting to conceal himself behind a Shell gas station in Jacumba. The alien freely admitted to being a citizen of Mexico who did not have any documents permitting him to enter or remain in the United States legally. The alien was arrested and transported to the Border Patrol station for processing. The alien told the agents that he had crossed the border on July 11, 2008, after being separated from the rest of his group on the Mexican side of the border. He said that he walked for approximately an hour and a half and arrived at the Shell gas station in Jacumba. The alien said that he was tired and hungry and that he went inside the gas station in order to ask an employee to call the Border Patrol. He stated that he had intended to turn himself in.

The alien went on to state that he approached an employee, who was later identified as Mr. Lopez, who was working at the Subway restaurant, which is located inside the gas station. The alien said that Mr. Lopez asked him if he had any money and he said no. Mr. Lopez then told the alien that if the alien could get $2,000, he would be able to smuggle the alien to where ever he wanted to go. The alien then provided Mr. Lopez with the telephone number for Mr. Lopez to call the alien's wife.

The alien said that Mr. Lopez used the restaurant's telephone and called the alien's wife. After a brief conversation, Mr. Lopez made arrangements with the alien's wife for her to wire $2,000 to him via Western Union. Mr. Lopez told the wife that he had the alien right there in his trunk and that he was ready to transport him as soon as he received the money. The alien said that although Mr. Lopez told his wife he was in the trunk, he was never in the trunk of any vehicle. Instead, the alien was instructed to hide behind a sedan and wait for further instructions. Mr. Lopez then handed the alien a sticky note with "Sergio Hirales (619) 766-4143" written on it. (This is Mr. Lopez' home telephone number.)

The alien said that he waited behind the sedan until the next day when he was apprehended by the Border Patrol.

On July 14, 2008, agents went to Mr. Lopez' residence in Boulevard, California, and met with Mr. Lopez, who agreed to answer questions. The agents asked Mr. Lopez if he knew why the agents were there and Mr. Lopez responded that he had been working at the Subway restaurant at approximately midnight when an individual approached him inside the gas station. Mr. Lopez said that he made arrangements over the phone with the alien's wife to have the alien smuggled to the destination of his choosing. Mr. Lopez sad that he instructed the aliens wife to wire him $2,000 for this service. Mr. Lopez said that he knew the individual was an illegal alien..

Mr. Lopez was placed under arrest for alien smuggling. The agent asked him if he had collected the $2,000 dollars from the Western Union yet and he said that he had. Mr. Lopez said that he had already given half of the money to a co-conspirator and that the remainder of the money was in Mr. Lopez' room. Mr. Lopez gave consent for the agents to search his room. The agents located a Western Union Receipt from Live Oaks Springs Market that indicated that on July 13, 2008, the sender transferred $2,000 via three separate transactions. It should be noted that the transaction was broken up into three separate transactions. Doing such is referred to as "structuring" and is a method typically used by alien smugglers in an attempt to avoid Cash Transmission Reporting requirements.

Agents discovered $841 in U.S. currency in a pair of shorts in the offender's closet and Mr. Lopez said that was the remainder of the money he received, adding that he had used the rest of the $1,000 to do some shopping.

At the station Mr. Lopez was advised of his rights per <u>Miranda</u> and agreed to speak with agents without his attorney present. Mr. Lopez said that he had been working at the Subway restaurant inside the Shell gas station in Jacumba for the past four weeks. He said that prior to that, he was in prison in Mexico until he was extradited to the United States and was then released from prison and sentenced to 30 months probation.

Mr. Lopez admitted that on the evening of July 12, 2008, an injured male entered the store and asked him for money to use the payphone. Mr. Lopez gave the man a dollar in quarters. A short time later, the man returned and claimed that the phone was not working. At that point, Mr. Lopez offered to call the man's wife. The man's wife asked him if he could give her husband a ride or assist in some other way, perhaps by employing a smuggler. Mr. Lopez said that the wife offered to pay him $1,000 for his assistance to which Mr. Lopez agreed. Mr. Lopez stated that at that time, he knew that the man was an illegal alien and that he was about to make arrangement to further the man's illegal entry into the United States. After speaking with the alien's wife, he called a good friend, named Donald Taylor, who had been involved in alien smuggling in the past. Mr. Lopez stated that he offered Mr. Taylor $1,000 to smuggle the illegal alien further into the interior of the United States and Mr. Taylor agreed. Mr. Lopez said that Mr. Taylor called the alien's wife later the next day.

On July 13, 2008, Mr. Lopez went to the Live Oaks Springs Market in Boulevard where he picked up the money the alien's wife had wired. Mr. Lopez said that the person facilitating the Western Union transaction said that the payment had to be broken up into three separate checks and he did not know the

exact reason why. After receiving the money, Mr. Lopez traveled to San Diego where he cashed the three checks, and met with Mr. Taylor and paid him $1,000. After meeting with Mr. Taylor, Mr. Lopez said that he spent some of his money on food and gasoline. Mr. Lopez said that he had no further contact with Mr. Taylor.

Mr. Lopez was released without prosecution.

Mr. Lopez contacted his probation officer and advised of the above arrest. He reported to my office the following day and prepared a written statement acknowledging his conduct.

## VIOLATION SENTENCING SUMMARY

### SUPERVISION ADJUSTMENT

Mr. Lopez was released from custody on June 17, 2008. He reported to the U.S. Probation office on June 18, 2008, and met with me. I scheduled him to return to my office on July 8, 2008, for an initial interview. Mr. Lopez reported on July 8, 2008, as scheduled and his conditions of supervision were explained to him as outlined in his Transfer Treaty Determination. He submitted to a urine test with negative results and was referred to Mental Health Systems Inc. (MHS) for Phase One drug testing. Mr. Lopez was very cooperative. He relayed that he was living with his mother in Boulevard, California, and working at the Outpost Travel Centers, Jacumba Shell, Subway and Valero, in Jacumba, California.

On July 11, 2008, I conducted a home visit at the offender's home in Boulevard, California, and met with Mr. Lopez and his mother. Once again, Mr. Lopez was very cooperative and polite. Mr. Lopez said that so far all was going well.

On July 14, 2008, I was contacted by a U.S. Border Patrol agent who advised that they had taken Mr. Lopez into custody for alien smuggling; however, he would be released without prosecution. I was able to speak with Mr. Lopez over the telephone while he was still in custody and instructed him to report to my office the next day. .

### OFFENDER PERSONAL HISTORY/CHARACTERISTICS

The Treaty Transfer Postsentence Investigation Report indicates that the instant offense is the offender's only conviction. At the time the report was prepared, the offender was also arrested on January 5, 2006, in Tecate, Baja California, Mexico for carrying a firearm without a license and was released the following day. The case remains pending in Mexico.

The report also notes that Mr. Lopez disclosed that he has smoked marijuana on a weekly basis and has done so since he was a teenager.

I would respectfully refer the Court to the Treaty Transfer Postsentence Investigation Report for further

information.

## SENTENCING OPTIONS
## CUSTODY

**Statutory Provisions:** Upon the finding of a violation, the court may modify the conditions of supervision; extend the term (if less than the maximum authorized term was previously imposed); or revoke the term of supervised release. 18 U.S.C. § 3583(e)(2) and (3).

If the court revokes supervised release, the maximum term of imprisonment upon revocation is 2 year(s). 18 U.S.C. § 3583(e)(3).

**USSG Provisions:** The allegation (aiding and abetting transportation of an illegal alien) constitutes a Grade B violation. USSG § 7B1.1(a)(2), p.s.

Upon a finding of a Grade B violation the court shall revoke supervised release. USSG § 7B1.3(a)(1), p.s.

A Grade B violation with a Criminal History Category I (determined at the time of sentencing) establishes an **imprisonment range of 4 to 10 months.** USSG § 7B1.4, p.s.

It is noted that in the case of a Grade B violation, and where the minimum term of imprisonment determined under USSG § 7B1.4, p.s., is at least one month but not more than six months, the minimum term may be satisfied by (A) a sentence of imprisonment; or (B) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement... for any portion of the minimum term. USSG § 7B1.3(c)(1), p.s.

## REIMPOSITION OF SUPERVISED RELEASE

If supervised release is revoked and the offender is required to serve a term of imprisonment, the court can reimpose supervised release upon release from custody. The length of such a term shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment imposed upon revocation. 18 U.S.C.§ 3583(h).

In this case, the court has the authority to reimpose a term of 3 year(s) supervised release, less any term of imprisonment imposed upon revocation. 18 U.S.C. § 3583(b).

## RECOMMENDATION/JUSTIFICATION

Mr. Lopez appeared to be off to a good start. He was residing with his mother and had already secured a job working for a restaurant. However, in less than one month after his release from custody, he aided and abetted the transportation of an illegal alien.

It is unknown what prompted Mr. Lopez to risk his freedom so quickly after being released from custody. Perhaps it was his desire to help the illegal alien, or perhaps it was the idea that he could earn some "fast money." It is apparent from Mr. Lopez' violation behavior that Court intervention is necessary, and the undersigned is respectfully requesting a no-bail bench warrant be issued for him to be brought before the Court.

To Mr. Lopez' credit, he was honest with the arresting agents and also to me when questioned about his new criminal conduct. What is concerning is that he has downplayed his and his cohort's role in the new criminal activity, by saying that all they did was take money and did not actually transport the illegal alien. I fear if he is committing new offenses in less than one month after his release from custody and is not adequately punished, he may continue to push the envelope and commit even more serious offenses. However, he has been honest and appears to be committed to doing the right thing now, including turning himself in to authorities should the Court issue a warrant.

If found to be in violation of supervised release, the undersigned recommends that supervised release be revoked and the offender be sentenced to one month custody, to be followed by 35 months supervised release, with a special condition that he reside in a Residential Reentry Center as a condition of his supervision for a period of four months. Additionally, a special condition of drug and alcohol treatment and that he not associate with any illegal aliens or alien smugglers is also recommended.

**I declare under penalty of perjury that the foregoing is true and correct.**

**Executed on:** July 24, 2008

| Respectfully submitted:<br>KENNETH O. YOUNG<br>CHIEF PROBATION OFFICER | Reviewed and approved: |
|---|---|
| by *Kelly J. Bonsavage*<br>Kelly J. Bonsavage<br>United States Probation Officer<br>(619) 409-5108 | *Mary Murphy*<br>Mary M. Murphy<br>Supervising U.S. Probation Officer |

# VIOLATION WORKSHEET

1. **Defendant:** Lopez, Sergio Hirales

2. **Docket No.** (Year-Sequence-Defendant No.): 08-CR-07036-001-IEG

3. **List Each Violation and Determine the Applicable Grade** (*See* USSG § 7B1.1):

   | Violation(s) | Grade |
   |---|---|
   | aiding and abetting the transportation of an illegal alien | B |

4. **Most Serious Grade of Violation** (*See* USSG § 7B1.1(b))  [ B ]
5. **Criminal History Category** (*See* USSG § 7B1.4(a))  [ I ]
6. **Range of Imprisonment** (*See* USSG § 7B1.4(a))  [ 4 - 10 months]

7. **Unsatisfied Conditions of Original Sentence:** None.

## THE COURT ORDERS:

__X__  A NO-BAIL BENCH WARRANT BE ISSUED BASED UPON A FINDING OF PROBABLE CAUSE TO BRING THE OFFENDER BEFORE THE COURT TO SHOW CAUSE WHY SUPERVISED RELEASE SHOULD NOT BE REVOKED FOR THE ALLEGED VIOLATIONS.

_____ Other _____

_____
The Honorable Irma E. Gonzalez
Chief U.S. District Judge

7/25/08
Date

kjb/kjb
EOA